IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD WINTON,<br>    Plaintiff,<br><br>vs.<br><br>SAINT VINCENT HEALTH CENTER,<br>d/b/a SAINT VINCENT HOSPITAL, and<br>ALLEGHENY HEALTH NETWORK<br>d/b/a ALLEGHENY SAINT VINCENT<br>HOSPITAL,<br>    Defendants. | C.A. No. 1:22-CV-256 |

MEMORANDUM OPINION

I.   INTRODUCTION

Presently before this Court is Defendants' Motion for Summary Judgment (ECF No. 70) and the Response in Opposition filed by Plaintiff Todd Winton ("Winton") (ECF No. 73). For the reasons set forth below, Defendants' Motion will be denied.

II.   FACTUAL BACKGROUND

This negligence action, the jurisdictional basis of which is diversity of citizenship, arises out of an accident at a hospital loading dock. Plaintiff alleges that his fall was caused by Defendants' failure to properly remove and/or treat accumulated snow and ice on a loading dock ramp. Named as Defendants are: Allegheny Health Network ("AHN") and Saint Vincent Health Center ("Saint Vincent"). Plaintiff seeks monetary damages for his injuries.

The following facts are taken from Plaintiff's Responsive Concise Statement and are undisputed unless otherwise noted.

1

In August 20, 2020, Plaintiff Todd Winton ("Winton") was hired by Stericycle as a box truck driver. ECF No. 73 ¶ 2. Stericycle, Inc. contracted to collect, transport, and dispose of medical waste from several AHN locations, including Saint Vincent Hospital in Erie, Pennsylvania. *Id.* ¶ 1. Plaintiff's duties included collecting medical waste and supplies from various sites, principally in Erie. *Id.* Saint Vincent Hospital was one of his regular Monday through Friday stops. *Id.* ¶ 3. Winton's primary responsibility involved dropping off empty containers at the New Dock located on West 23rd Street, and then retrieving full containers of hazardous waste from the Old Dock located at West 24th Street. *Id.* ¶ 4; ECF No. 73-2 at 2 (internal) 57:15-58:12; *Id.* at 4 (internal) 59:16-25. Winton generally sought to arrive at the Saint Vincent site by 6:30 a.m. to perform his duties, which required a 50-minute drive from his residence in New York state. ECF No. 73 ¶¶ 5, 11.

The day before the accident, snow was present on the Old Dock ramp. *Id.* ¶ 7. During his work that day, Winton cleared "wheel tracks and where [he] walked" using a shovel obtained from the dock. *Id.* ¶ 8. He also spread rock salt, obtained from the dock, where he shoveled. *Id.* ¶ 9.[1] Winton also testified that prior to January 19th, he never had any concerns about the Old Dock ramp and snowy weather. *Id.* ¶ 8.

On the morning of January 20, 2021, Winton began his 50-minute trip to report to Saint Vincent Hospital. *Id.* ¶ 10. Winton testified that it had snowed overnight. *Id.* ¶ 12. Upon his arrival, Winton noted that the road leading to the New Dock appeared to have been plowed, as it was covered by only a thin coating of snow, and he observed a snowplow clearing the nearby parking

---

[1] Plaintiff adds that January 19th was the first time that he obtained rock salt—to spread—from the bin at the site. ECF No. 73 ¶ 9. He further testified that, prior to January 19th, he had not encountered issues with the Old Dock ramp in winter, and that neither Stericycle nor Defendants trained or notified him regarding the Old Dock in snowy conditions. *Id.*

lot. *Id.* ¶¶ 13-14. Winton first delivered empty containers to the New Dock without incident. ECF No. 73-2 at (internal) p. 62:13. He then proceeded to the Old Dock to retrieve the full containers. *Id.* In contrast to the New Dock, the Old Dock appeared unplowed and was covered with between two to four inches of snow. ECF No. 73 ¶ 15; ECF No. 77-2 at (internal) p. 86:12.[2] Winton testified the ramp looked the same as the prior day and appeared unplowed. *Id.* ¶ 16. In response to the snowy condition of the ramp, Winton shoveled wheel tracks and spread the rock salt as he had done the previous day. *Id.* ¶¶ 17–18. He reported no difficulty walking up the ramp thereafter. *Id.* ¶ 18; ECF No. 73-2 at (internal) 93:5.

Winton then backed his Stericycle truck onto the dock, engaged the air brakes, and positioned a dock bridge plate—which was owned and maintained by the Defendants' Facilities Department—to span the gap between the truck and the dock. ECF No. 73 ¶¶ 19–20. Winton then began to walk back and forth across the dock bridge plate to enter the loading dock area where the hospital's hazardous waste material was kept. *Id.* ¶ 21.

After having been at the dock for approximately twenty minutes, and while crossing the dock plate in the course of his duties, Plaintiff's truck shifted. ECF No. 73-2 at (internal) 99:24. This movement dislodged the bridge plate, causing Winton to fall to the ground. ECF No. 73 ¶¶ 22–23. Shortly thereafter, he photographed the condition of the ramp with his cell phone. *Id.* ¶ 24.

Following the accident, Stericycle investigated and produced an Incident Report. *Id.* ¶ 25. Plaintiff objects to the report's admissibility as hearsay but notes that the report attributed the incident primarily to Defendants' failure to plow and salt the dock.

---

[2] There is evidence in the record that thirteen (13) inches of snow fell on January 18, 2.7 inches on January 19, and 1.9 inches on January 20, for a cumulative total of 17.6 inches, and that drift and freezing fog added further accumulation. ECF No. 73 ¶ 15.

3

At the time of the incident, Travis Phelps served as Defendants' Director of Environmental Services. ECF No. 77, ¶ 27. Phelps identified Eric Watson as the primary waste technician. *Id.* ¶ 28. Watson testified that Stericycle drivers were required to contact Environmental Services ("EVS") upon arrival. *Id.* ¶ 29. An EVS employee would open the Old Dock bay door, admit the driver, and unlock the storage room containing hazardous waste. *Id.* ¶¶ 30–31[3]. That room could be accessed only with a key kept at the dock. *Id.* ¶ 32.

Watson testified he was responsible for maintaining the dock area. *Id.* ¶ 34. Watson could not recall specifically whether the New Dock was operational in January 2021, but he did remember Stericycle pickups from the New Dock beginning sometime after January 2022. *Id.* ¶ 35.[4] His supervisor, Phelps, instructed him when Stericycle should cease using the Old Dock. *Id.* ¶ 36.[5] Phelps confirmed that Stericycle also delivered empty bins and racks. *Id.* ¶ 37.[6]

Phelps testified he did not know when or why Stericycle was directed to deliver at the New Dock while continuing to retrieve full waste containers from the Old Dock, nor did he know when or why the practice later changed so that both deliveries and pickups occurred at the New Dock. *Id.* ¶¶ 40–42.[7]

---

[3] Plaintiff appears to have mis-numbered the paragraphs of his Responsive Concise Statement. For duplicate enumeration the Court refers to paragraphs 31 and 31(2) accordingly.

[4] Defendants deny this fact; however, they do not cite the record in support of their denial. Accordingly, this Court will consider these facts undisputed for the purposes of the present motion. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: ... consider the fact undisputed for purposes of the motion.")

[5] *See* n. 4.

[6] *See* n. 4.

[7] *See* n. 4.

At the time of the incident, Paul Matters served as Vice President of Plant Operations. *Id.* ¶ 42. Both Watson and Matters confirmed that hospital groundskeepers were responsible for removing snow and ice from the Old Dock ramp. *Id.* ¶¶ 43–44.

Groundskeepers Carl Kaminski and Nick Dedad were employed by Defendants on the date of the incident. *Id.* ¶¶ 46, 50. Kaminski testified he had no recollection of the work performed that day, though he confirmed that groundskeepers were responsible for plowing the Old Dock ramp. *Id.* ¶¶ 47–48. He stated that Dedad operated the plow truck while Kaminski cleared sidewalks. *Id.* ¶ 49. Dedad admitted he was responsible for plowing the Old Dock ramp. *Id.* ¶ 52. He could not recall the weather on January 20, 2021, and had no record of work performed that day. *Id.* ¶ 51.

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) *citing Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may

be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

Unsupported allegations, subjective beliefs, or argument alone cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995) ("[T]he nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial."). If the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55, n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). In *Moore v. Walton*, 96 F.4th 616 (3d Cir. 2024), the Court of Appeals for the Third Circuit recently explained: "A genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might affect the outcome of the suit under the governing law." *Id.* at 622

(internal punctuation and citations omitted). *See also Tatel v. Mt. Lebanon Sch. Dist.*, 2024 WL 4362459, at *19–20 (W.D. Pa. Sept. 30, 2024); *Zurn Inds., LLC v. Allstate Ins. Co.*, 2024 WL 4350271, at *1 (W.D. Pa. Sept. 30, 2024).

IV.   ANALYSIS

Defendants move for summary judgment on two bases on which a landowner may be absolved of negligence liability under Pennsylvania law. First, Defendants assert that, pursuant to the assumption of risk doctrine, they lacked any duty to Winton since he engaged in an obvious and known danger. Second, Defendants assert that they are not liable for injuries sustained by the employee of an independent contractor. The burden is on Defendants to establish that there is no genuine issue of material fact in support of its arguments.

A.   **Assumption of the Risk**

Defendants contend that Winton's negligence claim is barred pursuant to the assumption of the risk doctrine, arguing that Winton assumed the risk of slipping to the ground by choosing to proceed with his work despite the known danger. First, Defendants argue that they did not owe Winton a duty of care, the first element of a prima facie negligence claim[8], because in the process of loading materials onto his truck, Winton undertook a "known and obvious" risk, thereby

---

[8] To establish a claim of negligence, a plaintiff must demonstrate that "the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 221 (Pa. 2018) (citation omitted).

7

relieving Defendants of the general rule that "[p]ossessors of land owe a duty to protect invitees[9] from foreseeable harm." *Carrender v. Fitterer*, 469 A.2d 120, 123–24 (Pa. 1983).

Assumption of the risk is an affirmative defense, and the burden rests with the defendant to establish that a plaintiff knowingly and voluntarily accepted the specific danger that resulted in the injury. *Bullman v. Giuntoli*, 761 A.2d 566, 573 (Pa. Super. Ct. 2000); *Jones v. Three Rivers Mgmt. Corp.*, 483 F.2d 885, 889-90 (3d Cir. 1973) (applying Pennsylvania law). Defendants rely on Pennsylvania law providing that a "possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Carrender*, 469 A.2d 123-24 (citing *Restatement (Second) of Torts* §§ 328-343B (1965)). *See also, Atkins v. Urban Redevelopment Auth. of Pittsburgh*, 414 A.2d 100, 104 (Pa. 1980) ("[T]he law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee.").

---

[9] In Pennsylvania "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." *Carrender*, 469 A.2d at 123. The parties do not dispute that Plaintiff was a business invitee. A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, the possessor:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger

*See Neve v. Insalaco's*, 771 A.2d 786, 790 (Pa. Super. 2001) (quoting Restatement (Second) of Torts § 343). An invitee must demonstrate that the proprietor deviated from its duty of reasonable care owed under the circumstances. *Id.* at 791.

8

For this argument to succeed, the record must establish that: (1) Winton consciously appreciated the risks attending his action; (2) he assumed the risk of injury by engaging in the action despite appreciating its risks; and (3) the injury he sustained was the same as that which he appreciated and assumed. *Bolyard v. Wallenpaupack Lake Estates, Inc.,* 2012 WL 629391, at *5 (M.D. Pa. Feb. 27, 2012) (citing *Bullman v. Giuntoli*, 761 A.2d 566, 573 (Pa.Super.Ct.2000)). The elements of the assumption of risk defense are inextricably linked, as the voluntariness of the encounter is only meaningful if the plaintiff was conscious of the precise danger he was choosing to face. *Gonzalez v. Brandtjen & Kluge, Inc.*, 1991 WL 208802 (E.D.Pa.1991)("Only if a plaintiff fully understands the specific risk, voluntarily chooses to encounter it, under circumstances that manifest a willingness to accept it, is he said to have assumed the risk.").

Importantly, "[t]he mere fact one engages in activity that has some inherent danger does not mean that one cannot recover from a negligent party when injury is subsequently sustained." *Bullman*, 761 A.2d 566, 572 (Pa. Super. 2000). Rather, assumption of risk may be established as a matter of law only where "it is quite clear that the specific risk that occasioned injury was both fully appreciated and voluntarily accepted." *Id.* at 571; *Barillari v. Ski Shawnee, Inc.*, 986 F. Supp.2d 555, 563 (M.D. Pa. 2013) (plaintiff "must be aware of 'the particular danger' from which he is subsequently injured in order to voluntarily assume that risk as a matter of law" (quoting *Bolyard*, 2012 WL 629391, at *6)).

Here, the record demonstrates that Plaintiff was aware of the general hazardous condition presented by the snow-covered dock on the day of the accident, but the record does not demonstrate that he was aware of the specific risk of the stationary box truck moving away from the dock causing the bridge plate to fall. Plaintiff's deliberate actions the morning of and the morning before—shoveling specific wheel tracks and a walking path, then applying rock salt—appear to

9

be a voluntary and reasonable effort to mitigate a perceived peril, which the record suggests was twofold: a general awareness of the danger of a general slip and fall and a more specific concern regarding the box truck slipping while being driven on the ramp.

Plaintiff worked this route through several winters, and testified that the dock was "often snowy," and he had encountered a "similar amount of snow" of "two or three inches" on prior occasions without incident. ECF No. 73-2 (internal) p. 66:10-21,23; ECF No. 73 ¶ 15. Further, Plaintiff testified he had "no concerns" about safety that day and that the snow was "manageable." *Id*. (internal) p. 66:8;91:25.

Analyzing the uncontested evidence from the day of the accident, Plaintiff's actions reveal a calculated effort to mitigate the risk of his truck slipping while *driving up or on* the ramp to the Old Dock. He shoveled wheel tracks to navigate the truck up the snow-covered ramp, demonstrating his awareness of the danger that the vehicle could lose traction and slide during its ascent while the vehicle was being driven. ECF No. 73-2 at 9 (internal p. 67) ¶ 11-17. This conscious mitigation of one peril, however, does not equate to the voluntary assumption of a different and latent one. After successfully parking the truck with its air brakes engaged, he had "no concerns" about safety after parking the truck. He chocked no wheels and cleared no further snow, indicating that he did not appreciate the risk that the parked box truck would suddenly shift backwards *down* the ramp while the vehicle was stationary. ECF No. 73 ¶ 8; ECF No. 73-2 at (internal) 92-3.

Additionally, Plaintiff stated that he specifically only shoveled "[t]he wheel tracks and where I walked when I get out of truck and walk up to the building." *Id*. at (internal) 89:5-6. *See also*, *Id*. at (internal) 92:1-3 ("Q: That you could walk on it and drive on it and you didn't feel the need to shovel it? A: Yes.") (discussing his prior actions of not shoveling or salting the area).His

shoveling and salting, based on his testimony and actions, reflects an attempt to mitigate the general peril of slipping on his way up to the building, and not slipping on the dock bay, slipping near the dock bridge, or slipping off of the dock bridge as a result of the truck's movement while parked.

The third part of the assumption of the risk doctrine specifically requires that the injury sustained be the same in kind as the injury whose risk was voluntarily assumed. *Bolyard*, 2012 WL 629391, at *5. *See also Dalton v. Little Lion*, 2021 WL 1293424, at *4 (E.D. Pa. Apr. 7, 2021). This is not satisfied merely because injuries stem from the same hazardous condition, i.e., ice and snow accumulation. "It is not enough that the plaintiff was *generally* aware that the activity in which he was engaged had accompanying risks. Rather, the plaintiff must be aware of "the *particular* danger" from which he is subsequently injured in order to voluntarily assume that risk as a matter of law." *Barillari v. Ski Shawnee, Inc.*, 986 F.Supp.2d 555, 563 (M.D. Pa. 2013) (citing *Boylard*, 2012 WL 629391, at *6 (emphasis in original)). Accordingly, unless Plaintiff's awareness extends to the very hazard that caused the injury, the defense of assumption of the risk cannot be sustained. Defendants have not met their burden in this regard.

Furthermore, this case is readily distinguished from those cited by Defendants where assumption of the risk was properly applied. In *King v. RockTenn CP, LLC*, 643 F. App'x 180, 183 (3d Cir. 2016), the plaintiff, a professional "yard jockey", was injured in a routine slip and fall on an icy surface he was aware of and had successfully navigated before. 643 F. App'x 180 at 184. The injury—a fall from losing his footing—was the precise manifestation of the risk he acknowledged. *Id.* Similarly, in *Atkins v. Urban Redevelopment Auth. of Pittsburgh*, 414 A.2d 100, 105 (1980), a plaintiff who was hired expressly to inspect abandoned buildings was injured as a result of a missing second step. The Supreme Court of Pennsylvania held he assumed the risk

11

because the injury—caused by a required repair—was the very type of generalized danger associated with entering abandoned buildings that was inherent to his tasked mission. *Id.*

Defendants have not met their burden to show that Plaintiff assumed the risk of the actual injury and therefore, summary judgment on these grounds will be denied.

In further support of their assumption of the risk theory of non-liability, Defendants point to Stericycle's policy allowing employees to stop a task where presented with safety concerns. The evidence shows that Stericycle employees' so-called "Stop Work Authority" was to be "freely exercised" without fear of retaliation or retribution. *See* ECF No. 70-8, pages 1-9. Defendants argue that the existence of the Stop Work Authority precludes Plaintiff from establishing a duty owed by Defendants to Plaintiff. Plaintiff argues that Restatement (Second) of Torts, § 343A, Comment f, supports the proposition that in this case, Defendants should have expected that the dangerous condition—the snow—would cause physical harm to the invitee despite its known or obvious danger. ECF No. 73 at 7 (citing *Robinson v. Seven Springs Mt. Resort, Inc.*, 2024 WL 2955263 (Pa. Super. 2024)).

Comment f states:

> "There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm."

Restatement (Second) of Torts § 343A (1965). The comment further clarifies that "Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that … the invitee will proceed to encounter the known or obvious

danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Id.*

Importantly, in this context, foreseeability is judged from the landowner's perspective. *See e.g., Burns v. Sherwin-Williams Co.*, 78 F.4th 364, 371 (7th Cir. 2023). Thus, although Defendants argue that the existence of Stop Work Authority forecloses any duty here because Plaintiff knew he could halt the task without consequence, that argument misconstrues the basis of the duty recognized under the Restatement. The relevant inquiry is not Plaintiff's knowledge of a procedure to avoid the hazard, but rather the Defendants' knowledge that an invitee would, in the ordinary course, encounter the specific hazardous condition—here, a snow-covered ramp. The mere presence of an alternative recourse for the Plaintiff does not extinguish a duty where the Defendant reasonably anticipated the Plaintiff would proceed.

Here, the Plaintiff regularly encountered the Old Dock covered in snow and proceeded to load and unload regardless of ongoing weather concerns. ECF No. 73-2 at (internal) 91:23. Critically, the groundskeepers, charged with the dock's maintenance and employed by Defendants, were aware that the Plaintiff's arrivals usually occurred in the mornings. ECF No. 73-2, p. 179 (Deposition of Nick Dedad). Furthermore, the condition of the dock—at the time of the Plaintiff's use—was "more often than not" snowy. ECF No. 73-2, p. 9 (Deposition of Plaintiff) ("A: No. Q: Once winter hit Erie, was that loading dock generally snowy, or was it, you know, cleared sometimes and not clear- - A: Sometimes. There was a few times it was cleared. Q: But more often than not it was not? A: Correct."). This record evidence suggests that the state of the maintenance of the Old Dock (or lack thereof) persisted as a matter of course with Defendants' knowledge that Plaintiff used it in its dangerous condition.

### B. Independent Contractor

Next, Defendants seek summary judgment arguing that they are not liable for injuries sustained by the employee of an independent contractor. Defendants posit that responsibility for the protection of Stericycle's employees is on Stericycle and Winton, rather than on the hospital.

It is well-established that "ordinarily one who engages an independent contractor is not responsible for the acts of such independent contractors or his employees." *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 150 (Pa. 1963) (citing *Fuller v. Palazzolo*, 197 A. 225, 231 (1938)). In *Hader,* the Pennsylvania Supreme Court explained:

> An owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor.

410 Pa. at 151. However, a landowner continues to owe business invitees[10], such as the contractor's employees, a duty of reasonable care to maintain the premises in a safe condition, subject to the limitation that no duty exists as to dangers that are open and obvious. *Carrender*, 469 A.2d at 123.

So then, the question becomes whether Stericycle was in temporary possession of the land so as to relieve Defendants of liability for any negligence. "An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises." *Hader*, 410 Pa. at 151. Such a determination is necessarily fact driven.

---

[10] Here, the parties do not dispute that Plaintiff was a business invitee. *See* ECF No. 71 at 3. As such, Defendants were "under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care." *Emge v. Hagosky,* 712 A.2d 315, 317 (Pa. Super. Ct. 1998).

In support of their contention that Stericycle had temporary possession of the premises, Defendants emphasize that they exercised no supervision, provided no technical advice, and were not present during Winton's performance of his duties. No one assisted Winton with his work, and no hospital employee possessed expertise in the tasks he performed. The only interaction Winton had with Defendants' employees was limited to obtaining a signature on his manifest upon completing his loading activities. *See* ECF No. 71, p. 13. In opposition to Defendants' argument, Plaintiff insists that Defendants merely allowed a delivery service to use the Old Dock ramp, but did not relinquish control of it to Stericycle.

The record evidence supports Plaintiff's contention. Stericycle's employees used the ramp for a limited time and a defined purpose: to effectuate the contracted-for transportation of medical waste. Other vendors likewise used the dock area. Upon arrival, Stericycle drivers were required to contact Defendants' Environmental Services personnel, who would open the Old Dock bay door to admit them and unlock the storage room, access to which was restricted to a key kept at the dock. Defendants' employees were responsible for snow removal from that area.

Defendants have not met their burden to demonstrate that Defendants relinquished temporary possession of the dock area to Stericycle so as to avoid liability for this accident. Summary judgment on these grounds will be denied.

## V. CONCLUSION

For the reasons set forth above, this Court finds that the facts in this case preclude the entry of summary judgment. Accordingly, Defendants' Motion for Summary Judgment will be denied. An appropriate Order follows.